1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
9
10

ANDREW J. DEITZ, individually and on
behalf of all others similarly situated,

11

No. C 06-06352 WHA

Plaintiff,

12

v.

13

**TENTATIVE ORDER GRANTING
IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS AND/OR TO STRIKE**

COMCAST CORPORATION, and
COMCAST CABLE
COMMUNICATIONS, INC.

14
15
16

Defendants.

17
18

**INTRODUCTION**

19

On or before **DECEMBER 13, 2006**, at **NOON**, each side may file a memorandum up to

20

four pages in length (double-spaced, no footnotes, 12-point font), critiquing this tentative order

21

and shall be prepared to address it as well at the hearing now set for **DECEMBER 14, 2006**, at

22

**8:00 A.M.**

23

**STATEMENT**

24

At all material times, defendant Comcast Corporation was involved in three principal

25

lines of business:  (1) cable, through the development, management and operation of broadband

26

communication networks, including video, high-speed internet and phone service;

27

(2) commerce, through QVC, the company's electronic retailing subsidiary, and (3) content,

28

through consolidated programming investments.  Defendant's acquisition of a broadband

**United States District Court**
For the Northern District of California

1  division became the largest cable operator in the United States, serving more than 21 million

2  cable subscribers (Compl. ¶¶ 15–16).

3      Plaintiff Andrew Deitz resided in San Francisco and was a basic service customer of

4  Comcast, which provided cable service to his home.  As part of his service, plaintiff rented a

5  cable converter box and remote control unit from Comcast, although he already owned a

6  cable-ready television and a VCR capable of receiving basic cable programming without a

7  converter box.  It is unclear how long plaintiff subscribed and paid for his cable box and remote

8  rental services.  Plaintiff, however, eventually terminated his box and remote service, although

9  he is still a Comcast subscriber for internet and telephone services (Opp. 13).

10     Plaintiff filed his original class-action complaint on September 11, 2006, in state court

11  on his own behalf and on behalf of all other similarly-situated citizens in California who were

12  allegedly charged for renting and paying for unnecessary cable equipment provided by

13  Comcast.  The federal Cable Communications Act expressly prohibits cable companies from

14  billing for services or equipment "that the subscriber has not affirmatively requested by name."

15  47 U.S.C. 543(f).  The complaint alleges that defendants failed to comply with Federal

16  Communications Commission ("FCC") rules and the Act by failing to obtain subscribers'

17  affirmative request for converters and/or remotes based on full disclosure to the subscriber of

18  the need for these services (Compl. ¶ 7–9).  Specifically, plaintiff asserts that defendants

19  charged for the rental of cable converter box equipment, including the converter box and remote

20  control, that were not required, at least in his case, to view basic level cable, expanded basic or

21  standard cable, or other basic, non-premium cable programming in violation of 47 C.F.R.

22  76.1602(b)(1) (Compl. ¶¶ 1–2, 34).  In addition, plaintiff contends that defendants also failed to

23  promote the commercial availability of third-party remote controls that subscribers could use

24  for all levels of service, including premium and basic programming in violation of 47 C.F.R.

25  76.1603 (Compl. ¶¶ 2, 34).  Plaintiff also alleges that defendants violated Section17200 of

26  California's Unfair Competition Law, Section 17500 of California's False Advertising Law, and

27  the CLRA.  Furthermore, plaintiff asserts claims of negligent misrepresentation and unjust

28  enrichment under state law.

**United States District Court**
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1      On October 11, 2006, defendants removed the action to this Court, asserting removal

2   jurisdiction pursuant to 28 U.S.C. 1332(d)(2)(A), 1441(a) and 1453.  Defendants then moved to

3   dismiss all of plaintiff's claims.  *First*, defendants argue that plaintiff has no standing to seek

4   prospective relief because he no longer rents cable equipment from defendants.

5   *Second*, defendants contend that California Civil Code Section 1782 precludes plaintiff's

6   damages claims under the CLRA because he failed to comply with its notice provisions.

7   *Third*, defendants argue that plaintiff's negligent-misrepresentation allegations lack the requisite

8   specificity.  *Finally*, defendants move to dismiss plaintiff's unjust-enrichment claims because

9   his rights are governed by contract.

10                                    **ANALYSIS**

11      **1.    LEGAL STANDARD.**

12      In ruling on a Rule 12(b)(6) motion, a court may ordinarily look only at the face of the

13   complaint.  *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  Here, however,

14   defendants rely on extra-complaint material, namely (i) a notice and demand letter sent by

15   plaintiff's counsel to defendants dated September 11, 2006, and (ii) a notice to customers

16   regarding policies and complaint procedures sent to cable subscribers by defendants.  A federal

17   court must treat a Rule 12(b)(6) motion as one for summary judgment under Rule 56 when such

18   material is entertained, as here.  *Cunningham v. Rothery (In re Rothery)*, 143 F.3d 546

19   (9th Cir. 1998).

20      Summary judgment is proper where the pleadings, depositions, declarations, attached

21   documents and other evidence "show that there is no genuine issue as to any material fact and

22   that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

23   A nonmoving party who bears the ultimate burden of proof at trial must "designate specific

24   facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

25   (1986).  It is not the task of the district court to scour the record in search of a genuine issue of

26   triable fact.  The nonmoving party has the burden of identifying with reasonable particularity

27   the evidence that precludes summary judgment.  *Keenan v. Allen*, 91 F.3d 1275, 1279

28   (9th Cir. 1996).  A genuine dispute as to a material fact exists if there is sufficient evidence for a

**United States District Court**
For the Northern District of California

1    reasonable jury to return a verdict for the nonmoving party.  On summary judgment, the

2    "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in

3    his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252, 255 (1986).

4          **2.    ARTICLE III STANDING AND PROSPECTIVE RELIEF.**

5          In this action, plaintiff seeks declaratory relief invalidating defendants' practice of

6    charging for unnecessary cable converter box equipment as a willful and knowing violation of

7    state law, specifically with regard to consumer-fraud and consumer-protection statutes.

8    In addition, plaintiff seeks injunctive relief to require affirmative consumer consent based on

9    full disclosure for rental of equipment and enjoin the defendants from renting cable converter

10   box equipment and/or remotes to basic programming customers who have a cable-ready TV or a

11   VCR.  Plaintiff also seeks an accounting for any overcharges.  Plaintiff himself rented both a

12   cable converter box and a remote control from defendants but no longer rents this equipment

13   from defendants, and does not now subscribe to cable services at all.

14         Defendants assert that plaintiff lacks standing for prospective relief because he no longer

15   rents a converter or remote control from defendants.  Plaintiff is no longer a subscriber of any

16   cable services.

17         To satisfy Article III's standing requirements, plaintiff must show that (1) he has

18   suffered an "injury in fact" that is (a) concrete, particularized, and actual (or imminent) rather

19   than conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the

20   defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed

21   by a favorable decision.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*,

22   528 U.S. 167, 180–81 (2000).  Additionally, where a plaintiff seeks declaratory and injunctive

23   relief, as in this case, plaintiff must demonstrate that he is "realistically threatened by a

24   *repetition* of the violation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006)

25   (citing *Armstrong v. Davis*, 275 F.3d 849, 860–61 (9th Cir. 2001) (emphasis in original)).

26         Plaintiff asserts that he has standing because defendants' conduct continues to

27   negatively affect plaintiff and is bound to cause future harm (Reply Br. 14).  Because he lives in

28   an area where he can still subscribe to cable services, plaintiff argues in vague terms that relief

4

1    would remedy "the harm [he] has suffered through the inconvenience of terminating his

2    subscription to cable services."  Plaintiff also states that at the very least, the requested

3    injunctive relief would provide a benefit to him by offering him more potential choices for

4    obtaining television program services.

5          To support his argument, plaintiff relies on an unpublished decision in *Gonzales v.*

6    *Metropolitan Transportation*.  73 Fed. Appx. 986 (9th Cir. 2003).  *Gonzales*, however, is

7    factually distinguishable from the case at hand.  In *Gonzales*, the plaintiff sought injunctive

8    relief against her past employer to stop the employer's practice of random drug testing.

9    The Ninth Circuit held her claims were not moot because the plaintiff testified that she would

10   resume her employment with the defendants once the drug testing was stopped.  Unlike the case

11   at bar, the plaintiff in *Gonzales* made a clear showing that she could not avoid the injuries she

12   complained of unless she declined to return to her employment with the defendants.[1]

13         The alleged wrong sued on is over as to plaintiff.  That history, while relevant, does not

14   establish standing without some continuing, present adverse effect.  *O'Shea v. Littleton*,

15   414 U.S. 488, 496–97 (1974).  Plaintiff is no longer a cable subscriber and has not demonstrated

16   there exists a definitive likelihood that he will once again become a subscriber of defendants'

17   cable services.  *See O'Shea*, 414 U.S. at 496–97 (stating that the test for standing in the

18   injunctive-relief context requires a showing of a definitive likelihood of future harm to the

19   plaintiff).  Here, plaintiff has not stated or demonstrated that he will re-subscribe to cable

20   services if he is not required to rent cable equipment from defendants.  As a result, plaintiff's

21   claims of possible future injury are too speculative and attenuated to warrant prospective relief.

22   *See Hodgers-Durgin v. De Le Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999).

23         Plaintiff further argues that a class allegation cures his own standing problem.

24   Surely, there must be some class members, he urges, who have suffered the same course of

25   conduct but have not terminated their cable television service with defendants (Opp. 15).

26   _____

27         [1] Plaintiff also mischaracterizes the holding of the *Gonzales* decision in his brief.  Plaintiff states that the Ninth Circuit held that injunctive relief was an effective remedy for the plaintiff.  In actuality, the Ninth Circuit ultimately reversed a grant of summary judgment for the plaintiff.  The court instead ordered

28   summary judgment for the defendants, holding that random drug testing of employees who perform safety-sensitive functions was constitutional.  *Gonzales*, 73 Fed. Appx. 986, 989–90.

**United States District Court**
For the Northern District of California

1   The Ninth Circuit held in *Hodgers-Durgin*, however, that system-wide injunctive relief is not

2   available based on alleged injuries to unnamed members of a proposed class.  *Id.* at 1045.

3   *Unless the named plaintiff is himself entitled to seek injunctive relief, he "may not represent a*

4   *class seeking that relief." Ibid.*  Any injury that unnamed members of the proposed class may

5   have suffered is irrelevant to the question whether our named plaintiff is entitled to the

6   injunctive relief he seeks.  Defendants' motion for summary judgment as to plaintiff's claims

7   for prospective relief for all claims are therefore **GRANTED**.

8         **3.**    **UNFAIR COMPETITION CLAIMS AND FALSE ADVERTISING CLAIMS.**

9         Plaintiff seeks damages and prospective relief under California Business and Professions

10  Code Sections 17200 and 17500.  As stated above, plaintiff is not entitled to prospective relief

11  because he has no Article III standing.  Plaintiff's damages claim, however, properly remains at

12  issue, at least for Article III purposes.

13        Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and

14  unfair, deceptive, untrue or misleading advertising . . . ."  The California Supreme Court has

15  stated that "[t]he Legislature intended this sweeping language to include anything that can

16  properly be called a business practice and that at the same time is forbidden by law."

17  *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 560 (1998) (citations omitted).

18  Section 17204 authorizes "any person who has suffered injury in fact and has lost money or

19  property as a result of . . . unfair competition" to sue under Section 17200.

20        Plaintiff here alleges an "injury in fact" in that he suffered economic loss by being

21  required to rent cable equipment from defendants, despite the fact that his television was

22  cable-ready.  Because plaintiff's unfair competition claims set forth a basis for a claim of actual

23  economic injury that resulted from defendants' alleged unfair and illegal business practice,

24  this order holds that plaintiff can properly bring suit under Section 17200, at least insofar as

25  Article III is concerned.

26        Nonetheless, "[a] plaintiff alleging unfair business practices under these statutes must

27  state with reasonable particularity the facts supporting the statutory elements of the violation."

28  *Khoury v. Maly's of California, Inc*., 14 Cal. App. 4th 612, 619 (1993); *Silicon Knights Inc., v.*

*Crystal Dynamics Inc.*, 983 F. Supp. 1303, 1316 (N.D. Cal. 1997).  Here, plaintiff asserts that defendants' conduct of improperly charging basic programming customers for rental equipment when it was unnecessary constitutes willful and unknowing unfair methods of competition and deceptive business practices.  Plaintiff also claims that defendants failed to comply with the negative option billing prohibitions in 47 U.S.C. 543(f) and never obtained subscribers' affirmative request for converters and/or remotes based on full disclosure (Compl. ¶ 70–74).  With respect to his Section 17500 claim, plaintiff alleges that defendants' advertisements, promotions, labeling, policies, acts and practices were intended to and resulted in misleading customers to their detriment.  The complaint, therefore, specifically identifies certain acts by defendants that relate to violation of a statute, thereby placing defendants on notice of facts which could support a claim of unfair conduct.  Furthermore, defendants do not argue that plaintiff has failed to meet the standards under these two theories for their damage claims.  Defendants' motion as to plaintiff's Section 17200 and Section 17500 claims for damages are therefore **DENIED**.

### 4.    SECTION 1782'S NOTICE REQUIREMENT.

Section 1782 of the CLRA requires a consumer to notify those alleged to have committed deceptive practices at least thirty days prior to commencing an action for damages.  The CLRA provides that the consumer may not recover damages if appropriate correction, repair, replacement or other remedy is given.  *See* Cal. Civ. Code 1782(a)–(c), 1784.  Plaintiff, in this action, seeks both damages and prospective relief under the CLRA.  Again, because plaintiff has no Article III standing, only his damages claim under the CLRA remains at issue.

Section 1782 scrupulously prohibits any action for damages unless its notice provisions are met.  *Laster v. T-Mobile USA, Inc.,* 407 F. Supp. 2d 1181, 1195 (S.D. Cal. 2005).  This order finds that plaintiff failed to satisfy the notice requirement because he did not wait the required thirty days before seeking damages.  On or around September 11, 2006, plaintiff sent to defendants a written notice and demand letter of their alleged violations of the CLRA (Escher Decl. Exh. A).  On September 11, 2006, the very day he dated his notice and demand

1   letter, plaintiff then proceeded to file his complaint, which included a request for damages under

2   the CLRA.

3        Plaintiff argues that defendants misconstrue the language of the complaint by

4   interpreting it as requesting damages for his CLRA claim.  Specifically, plaintiff asserts that

5   paragraph 91 explicitly states that the complaint would be amended to include damages plaintiff

6   would be entitled to and describes in paragraph 92 *if* defendants failed to provide adequate

7   redress within thirty days (Opp. 3–4).  Plaintiff contends that this language in the complaint is

8   clear in expressing that although plaintiff was entitled to damages under Section 1789, such

9   damages were not presently being sought.

10       As defendants correctly point out, however, the language in paragraph 92 is precisely

11  the same language plaintiff uses affirmatively to seek damages under his other claims:

12            92.    Plaintiffs and Class members are entitled to, pursuant to
                   Civil Code § 1780(a)(2), an order enjoining Defendants'
13                 above-described wrongful acts and practices, providing restitution
                   to Plaintiffs and members of the Class plus actual damages,
14                 punitive and statutory damages, interest and ordering the payment
                   of costs and attorneys' fees and any other relief deemed
15                 appropriate and proper by the Court under Civil Code § 1780.

16  (Compl. ¶ 92; Reply Br. 6).  Plaintiff's attempt to rewrite and recharacterize his complaint is

17  unpersuasive.  The plain language of the complaint clearly lays out his request for damages

18  without any conditions.  Plaintiff's inclusion of the confusing language in paragraph 91 does not

19  cure his failure to wait the requisite thirty days before seeking damages under the CLRA.

20  Because plaintiff failed to comply with Section 1782, thereby denying defendants sufficient

21  notice of alleged violations to permit appropriate corrections or replacements, his claim for

22  damages under the CLRA is dismissed.

23       **5.    NEGLIGENT MISREPRESENTATION CLAIM.**

24       The following section addresses claimed defects on the face of the complaint.  For these

25  purposes, the motion will be treated as one to dismiss rather than a motion for summary

26  judgment.

27       All agree that the negligent-misrepresentation claim must, at the very least, meet the

28  notice pleading requirements of Rule 8(a)(2).  The parties disagree, however, over whether

*United States District Court*
For the Northern District of California

8

United States District Court

For the Northern District of California

1    plaintiff must also meet the heightened pleading requirements of Rule 9(b).  Plaintiff asserts that

2    the applicable standard to apply to a claim for negligent misrepresentation is Rule 8(a) and

3    relies on the district court case in *In re Heritage Bond Litigation*.  289 F. Supp. 2d 1132 (C.D.

4    Cal. 2003).  That decision held that Rule 9(b) does not expressly apply to a claim for negligent

5    misrepresentation.  *Id.* at 1132.  Most district courts within the Ninth Circuit have held,

6    however, that a negligent-misrepresentation claim is subject to the heightened requirements of

7    Rule 9(b).  *See Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141

8    (C.D. Cal. 2003) (stating that the elements of a cause of action for negligent misrepresentation

9    are the same as those of a claim for fraud, with the exception that the defendant need not

10   actually know the representation is false).[2]  This order will follow the guidance of the other

11   district courts that have consistently held that Rule 9(b) is the correct pleading standard to apply

12   to negligent misrepresentation claims.

13          Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances

14   constituting fraud or mistake shall be stated with particularity."  A pleading is sufficient under

15   Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare

16   an adequate answer from the allegations.  *Neubronner v. Milken*, 6 F.3d 666, 671

17   (9th Cir. 1993).  Averments of fraud must be accompanied by "the who, what, when, where, and

18   how" of the misconduct charged in the complaint.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

19   1097, 1106 (9th Cir. 2003).

20          Throughout his complaint, plaintiff asserts that defendants made material

21   representations or omissions regarding the need for rental of cable equipment, misrepresented

22   the availability of this equipment from third parties, and failed to adequately inform subscribers

23   that they no longer needed to rent this equipment from defendants since channels were no

24   longer scrambled (Compl. ¶¶ 1–10, 41–59, 64–68, 76–8, 94).  The complaint, however, does not

25   provide the particulars of when, where, or exactly how the alleged misrepresentations occurred.

26

27          [2] *See also Thomas v. Hickman*, 2006 WL 2868967, at *24 (E.D. Cal. 2006) (applying Rule 9(b) to a
     negligent-misrepresentation claim); *Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214,

28   1219 (E.D. Cal. 2005) (stating that "[i]t is well-settled in the Ninth Circuit that misrepresentation claims are a
     species of fraud, which must meet Rule 9(b)'s particularity requirement"); *Glen Holly Entm't, Inc. v. Tektronix,
     Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999) (same).

The complaint cites to only one specific source of misrepresentation — defendants' standardized billing statements.  The complaint alleges that defendants' billing statements included improper charges for rented cable equipment (Compl. ¶ 82).  How a recorded charge on a billing statement led plaintiff to believe the rental equipment was necessary and would induce him to rent the equipment solely from defendants is entirely unclear. Furthermore, plaintiff's general allegations that defendants' "advertisements, promotions, labeling, policies, acts and practices" were untrue and misleading are likewise too general and unspecific (Compl. ¶ 94).

In his opposition, plaintiff makes only a conclusory statement that the complaint has satisfied the more rigorous requirements of Rule 9(b) (Opp. 8–11).  This order holds that the present allegations are insufficient to fulfill Rule 9(b)'s pleading standards.  The deficiencies of plaintiff's complaint, however, may possibly be cured by amendment.  Consequently, leave to amend will be **GRANTED**.

**6.     UNJUST-ENRICHMENT CLAIM.**

With respect to the unjust-enrichment claim, defendants argue that because plaintiff has pleaded the existence of a valid contract, he cannot also make an unjust-enrichment claim. Plaintiff replies that he has not conceded that the parties' relationship was governed by a contract (Opp. 5).  Defendants rejoin that under California state law, plaintiff does not have a legal right to claim unjust enrichment where there is no dispute regarding the existence of a written agreement between the parties (Reply 4–6).

As defendants have not answered the complaint, it is unclear whether there exists a valid written agreement between the parties.  Defendants have provided the Court with a notice of defendants' procedures and policies, which they assert is the governing contract (Br. 5). Although this document is informative as to the representations made by defendants, it is too early to conclude that this document constitutes the governing agreement between the parties. The notice does state that it expressly sets forth the customer's "sole and exclusive remedies under the agreement" (Escher Decl. Exh. B 2)  Such statements, however, are not dispositive as to whether the notice constitutes a valid contract between the parties.  For one, the document

10

United States District Court

For the Northern District of California

1   appears to be a general notice and is not signed by any of the parties.  Furthermore, defendants

2   have not proven that plaintiff either received or reviewed this document.  Other sub-issues may

3   encumber the question.  Accordingly, the motion as to this claim is **DENIED**.

4                                              **CONCLUSION**

5          For the foregoing reasons, defendants' motion to dismiss plaintiff's claims, construed as

6   a motion for summary judgment, is **GRANTED IN PART AND DENIED IN PART**.  Because

7   plaintiff fails to demonstrate Article III standing, defendants' motion for summary judgment as

8   to plaintiff's claims for declaratory and injunctive relief is **GRANTED**.  Defendants' motion for

9   summary judgment as to plaintiff's Section 17200 and 17500 claims for damages, however, is

10  **DENIED**.  Additionally, because plaintiff has not complied with Section 1782's notice

11  requirement, plaintiff's CLRA claim for damages is **DISMISSED WITH PREJUDICE**.  Finally,

12  with respect to plaintiff's state claim for negligent misrepresentation, plaintiff has failed to meet

13  Rule 9(b)'s pleading standard.  Consequently, plaintiff's negligent misrepresentation claim is

14  **DISMISSED WITH LEAVE TO AMEND**.  Any such amendment must be filed by **DECEMBER 21,**

15  **2006**.

16

17         **IT IS SO ORDERED.**

18

19  Dated:  December 7, 2006.

20                                                               WILLIAM ALSUP
                                                                 UNITED STATES DISTRICT JUDGE
21

22

23

24

25

26

27

28