IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW J. DEITZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS, INC.,<br><br>    Defendants.<br>_____ / | No. C 06-06352 WHA<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION** |

## INTRODUCTION

In this consumer-rights case, plaintiff Andrew Deitz moves to certify two classes of subscribers to defendants' cable-television services. For the below-stated reasons, plaintiff has not met the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3). Accordingly, the motion for class certification is **DENIED**.

## STATEMENT

**1.     ALLEGATIONS AGAINST COMCAST.**

Defendants Comcast Corporation and Comcast Cable Communications, Inc. comprise the largest cable television provider in the United States. At all relevant times, Comcast's cable subscribers were charged monthly fees based on the particular level of service they selected.

These monthly fees often included rental charges for equipment such as converter boxes and remote controls (Compl. ¶¶ 22–25).[1]

In 1992, the Federal Communications Commission was empowered under 47 U.S.C. 544a to promulgate rules designed to benefit consumers by prohibiting the scrambling of basic cable service and allowing unscrambled stations to be viewed without the need to rent a converter box. In 1994, the Commission promulgated regulations requiring cable operators to offer subscribers the option of receiving unscrambled signals that could be accessed through the subscribers' "cable-ready" televisions and VCRs. Such cable-ready devices could receive unscrambled cable signals directly without a converter box. Also in 1994, the Commission established equipment compatibility requirements for cable-ready televisions and VCRs that prohibited the manufacture or importation of non-compatible cable-ready equipment. The net result of these regulations was that a converter box was no longer required for basic programming subscribers and that no subscriber needed to rent a remote control regardless of their level of service, at least if the customer had a cable-ready set (Compl. ¶¶ 30–36, 43).

Even after the Commission implemented its rules, however, cable companies continued to make converter boxes available for rental to its subscribers. Customers with cable-ready televisions who wanted to watch digital cable, use an on-screen menu, watch Pay-Per-View programs, or listen to music needed (and still need) a converter box to access those features. These features were not available to customers who tuned basic cable directly through their cable-ready televisions (Schulz Decl. ¶ 5). Moreover, certain televisions marketed as cable-ready had limited channel capacity and a converter box was required to access the full-range of unscrambled stations offered by Comcast (*id.* at ¶ 6). Some customers also rented a converter box to resolve reception problems (*id.* at ¶ 7). Additionally, a converter box would often be provided to customers as part of a premium package, rather than the basic programming services. As to those premium packages, the equipment was rented as a necessary

---

[1] The citations to the complaint are to the first amended complaint, the second amended complaint having been stricken by order filed concurrently herewith.

2

part of the package (*id.* at ¶¶ 8, 9, 12–16).  Plaintiff does not contest these facts, which are undisputed in the record.

The Communications Act of 1934 was amended in 1992 to expressly prohibit cable operators from charging subscribers for services or equipment "that the subscriber has not affirmatively requested by name."  47 U.S.C. 543(f).  The Act thus prohibits "negative option billing," the practice of providing goods automatically and requiring the customer to either pay for the goods or affirmatively decline the goods.  According to this provision, Comcast was required to obtain the affirmative request of every customer for each piece of optional equipment rented.  The complaint alleges that at all material times, defendants never obtained an affirmative request for a set-top converter box or remote control from plaintiff or other class members (Compl. ¶ 45).[2]

### 2. PLAINTIFF ANDREW DEITZ.

Plaintiff was a Comcast subscriber since at least 1996.  Between 1996 and 2002, plaintiff was single and lived alone.  At his deposition, plaintiff gave two conflicting versions of his cable-television subscription history during these years.  Initially, he testified that he rented a converter box and remote control from Comcast as a "basic" cable subscriber between 1996 and 2002 (Jaffe Decl. Exh. A at 25, 27, 31).

This version, however, was almost immediately contradicted in his deposition.  He recalled that in July 2002, his then-girlfriend, Stephanie Yulga (now Stephanie Yulga Deitz), moved in with him.  Ms. Yulga decided to upgrade from basic cable to a Digital Silver premium package.  The Digital Silver package included a number of channels and services, as well as a converter box and remote control, all for one fee.  Plaintiff testified that August 2002 was the first time Comcast ever provided him with any equipment at all, when it was included as a *necessary* part of the bundled flat-rate Digital Silver programming package (Jaffe Decl. Exh. A at 64–66, 71, 75, 76).  Thus, before 2002, plaintiff rented basic cable without renting any

---

[2] Section 543(f) does not provide for, nor does plaintiff attempt to assert, a private right of action for a violation of that provision. *See People of the State of Illinois ex rel. Burris v. Comcast Cable of Paducah, Inc.*, No. 94 C 4103, 1994 WL 502008, at * 1 (N.D.Ill. Sept. 12, 1994) (Hart, J.).  Plaintiff instead relies on California state-law claims based on negligent misrepresentation, the Consumer Legal Remedies Act, and unjust enrichment.

3

equipment. He then upgraded in 2002 to a package that required equipment. It is undisputed that renting the equipment was a necessary requirement of subscribing to the Digital Silver package. There was no possible Communications Act violation when Comcast provided Deitz with equipment as part of the Digital Silver package.

When the couple moved in September 2004, they terminated the old cable service and signed up for a new cable account at their new home. When Comcast installed the service, plaintiff Andrew Deitz signed the installation work order acknowledging receipt of the Comcast welcome kit, satisfactory completion of the work, and acknowledgment of the terms of the subscriber agreement included in the welcome kit. At this point they were still on the premium plan and still needed the converter box.

At some point in late 2004 or early 2005, however, Deitz or his wife called Comcast to downgrade from Digital Silver to basic cable. They kept the equipment, however, marking the first time they were charged separately for equipment rental (Jaffe Decl. Exh. A at 73, 74, 77, 91, 94–95). Forty-five days after this downgrade, plaintiff returned the converter and remote control to Comcast and Comcast ceased billing Stephanie Deitz (the named account holder) for the equipment (Jaffe Decl. Exh. A at 92, 99–100).

Defendants maintain in their opposition that the first time plaintiff ever received equipment — necessary or unnecessary — was in 2002 when he subscribed to the Digital Silver package. Before that, defendants swear, Deitz subscribed to basic cable without a box and therefore must have known that he did not need a box to view basic cable. Thus, the first time he ever got a converter box was because his household subscribed to the *premium* plan that required it. Plaintiff's theory of the case must therefore be narrowed to being charged for unnecessary equipment *after* he downgraded from premium to basic. This theory, however, is *not* alleged in the complaint. (Nor would it have been alleged in the second amended complaint, rejected in the separate order.)

**3.     MOTION FOR CLASS CERTIFICATION.**

In this action, plaintiff asserts three claims against defendants: (1) a claim under the Consumer Legal Remedies Act, Cal. Civ. Code 1750; (2) unjust enrichment; and (3) negligent

4

misrepresentation. Plaintiff seeks certification of each of these claims on behalf of the following classes:

> *Class A*: All present and former Comcast customers in California that have or had a cable-ready television set(s) or a video cassette or DVD recorder or player and subscribe or subscribed to basic programming, expanded basic, standard programming or other comparable basic service provided by defendants and have paid defendants rental charges for cable converter box equipment, including a converter box and a remote control from October 31, 1994 to the present.
>
> *Class B*: All present and former Comcast customers in California that rented and paid for a remote control from October 31, 1994 to the present, regardless of the level of service they subscribed to.

**ANALYSIS**

Pursuant to Federal Rule of Civil Procedure 23(a), a class can only be certified if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." If those four requirements are met, then the action must fall into one of the categories of class actions recognized in Rule 23(b).

Plaintiff here moves pursuant to Section (b)(3) of Rule 23 for certification of both classes. Rule 23(b)(3) states that an action may be maintained as a class action if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

As the party seeking class certification, plaintiff has the burden of demonstrating that Rule 23's requirements are met. The Court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

5

### 1.     RULE 23(a).

For the below-stated reasons, this order finds that the typicality and adequacy requirements of Rule 23(a) are not met.

#### A.     Typicality.

Rule 23(a)(3) requires that the claims or defenses of the class representative "be typical of the claims or defenses of the class." The claims of the purported class representative need not be identical to the claims of other class members, but the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). The test "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

This action seeks to recover on behalf of customers who subscribed to basic programming and who were provided, but did not affirmatively request, a converter box and remote control. Plaintiff Deitz, however, *did* affirmatively request a converter and remote control when he and his wife subscribed to the Digital Silver *premium* package. Plaintiff could not have subscribed to Digital Silver without also renting the equipment. Plaintiff was *only* charged separately for the equipment *after* he downgraded to basic cable but kept the equipment. This is now undisputed, although at his deposition plaintiff Deitz tried at first to testify against the true history. The complaint here, however, is founded on an allegation that such equipment was provided to and installed for *new* subscribers of *basic* programming. According to the complaint, it was this installation at the time of a new subscription to basic programming that was problematic because it misled the consumer into believing the equipment was necessary to view basic cable (Compl. ¶¶ 47–52). But plaintiff's box and remote were installed *before* his subscription to basic programming because he had previously subscribed to the Digital Silver package. We must remember that when he originally subscribed to basic programming, he was not even provided with any equipment.

6

It is not enough, as plaintiff suggests, that at some point while he subscribed, "he was charged for equipment he did not need" (Reply Br. 8). A defense that Comcast refers to several times in its opposition is that Comcast actually *was* in compliance with the Communication Act's requirement because it did obtain its customers' affirmative consent for equipment rental. Because plaintiff *did* request equipment by subscribing to the Digital Silver premium package, Comcast's defense will have special applicability to plaintiff's individual facts. *See*, *e.g.*, *Belton v. Comcast*, __ Cal. Rptr. 3d __, 2007 WL 1651878, at *5–6 (June 8, 2007) ("Since the undisputed facts established that neither plaintiff was provided or billed for a service he did not order by name plaintiffs could not, as a matter of law, establish that Comcast's practice constituted negative option billing in violation of 47 United States Code section 543(f)."). The same cannot be true for all the unnamed putative class members plaintiff seeks to represent.

Additionally, plaintiff admitted in his deposition that he had not read Comcast's policies and practices notice, the welcome kit, or even many of his bills (Jaffe Decl. Exh. A at 34–35, 48–49, 78–79, 124–25, 129, 132, 149–50). These are the very documents plaintiff claims were misleading to Comcast subscribers. Here, plaintiff will have to prove reliance. *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 754 (2003); *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986). Because plaintiff did not read any of Comcast's communications, he will be subject to a unique defense that he did not read, and thus could not have relied on, any of the misstatements.

It is predictable here that because of plaintiff's unique circumstances, "a major focus of the litigation will be on . . . defense[s] unique to him." *Hanon*, 976 F.2d at 508. "[W]hen named plaintiffs are subject to unique defenses which could skew the focus of the litigation, district courts properly exercise their discretion in denying class certification." *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997). This order finds that plaintiff Deitz is not typical of the class he seeks to represent.

It is worth noting that plaintiff's counsel, a Vermont lawyer, has been litigating cases like this against Comcast all over America. It is not too much to ask that he vet his state-by-state plaintiffs before launching litigation. Plaintiff here, a friend of counsel's since

7

1  college, is an inappropriate named plaintiff for what may be legitimate claims (Jaffe Decl. Exh.
2  A at 11).[3]

### B. Adequacy of Representation.

Under Rule 23(a)(4), the person representing the class must be able "fairly and adequately to protect the interests" of all members in the class. The criteria for determining the adequacy of representation are twofold. "First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Defendants do not dispute the competence of plaintiff's counsel, but do object to the adequacy of plaintiff as a representative.

This order finds that plaintiff himself is not an adequate representative. "[A]dequacy of representation may be defeated when litigation of the matter could be overwhelmed by disposition of unique defenses." *Gartin v. S & M Nutec LLC*, No. CV 06-2747SVWPLAX, 2007 WL 1424654, at *3 (C.D. Cal. Apr. 04, 2007) (Wilson, J.). Indeed, courts have held that differences in proof of reliance, where such proof is required, may render a representative inadequate. *Ibid.* ("Plaintiff admits she never saw (let alone relied upon) any of NuTec's statements. This distinguishes Plaintiff's claim from those of many absent class members, as the Complaint alleges that NuTec's statements misled class members. . . . Thus, because Plaintiff relied on different representations and possessed a unique medical history, she is ill-suited to represent absent class members."); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 119 F.R.D. 344, 346 (S.D.N.Y. 1988) (Haight, J.). Here, reliance

---

[3] One action is *Thibodeau v. Comcast Corp.*, Pa. Ct. of Comm. Pleas, No. 04526, which has asserted similar claims based on Pennsylvania law on behalf of a nationwide class before the Pennsylvania Court of Common Pleas. The Pennsylvania appellate court recently affirmed the lower court's denial of Comcast's petition to compel arbitration. *See Thibodeau v. Comcast Corp.*, 912 A.2d 874 (Pa. Super. 2006). Another action is *Anderson v. Comcast Corp.*, D. Mass., No. 05-1114, which was originally filed in the Trial Court of Massachusetts Superior Court Department, but removed to the United States District Court for the District of Massachusetts. That complaint states similar claims as those alleged here based on Massachusetts law and on behalf of a nationwide class. Comcast moved to compel arbitration there and the motion was granted in part by District Judge Michael Ponsor. Both parties have cross-appealed to the First Circuit, which heard argument in April 2007. No decision has issued yet.

8

is an important requirement of the complaint's claims. Plaintiff, however, admitted that he had not read or relied on any of Comcast's communications that the complaint alleges were misleading. Because unique reliance issues will arise, plaintiff has not met his burden of proving that he is an adequate representative.[4]

**2.      RULE 23(B)(3).**

**A.      Predominance.**

The predominance requirement of Rule 23(b)(3) "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement, and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The test is "far more demanding" than the Rule 23(a) commonality analysis. "[T]he Court must identify the substantive issues raised by the cause of action and then inquire into the proof relevant to each issue." *In re Beer Distrib. Antitrust Litig.*, 188 F.R.D. 549, 556 (N.D. Cal. 1998) (Williams, J.).

This order recognizes that plaintiff has identified some issues of law and fact that, at least as alleged, are common to the class. Comcast does not dispute, for example, that the welcome kits, equipment notices, and work orders were uniform throughout California. Plaintiff alleges that these system-wide notices were misleading. In addition, one of Comcast's defenses may be that the California-wide welcome kits and notices truthfully conveyed that the equipment was unnecessary and that the work orders constituted affirmative consent. This order does acknowledge the uniformity of Comcast's conduct and the commonality of at least some issues. Despite these common issues, however, and because of the particular circumstances of this case, this order holds that plaintiff has not carried his burden of proving

---

[4] This order rejects plaintiff's contention that he is entitled to a presumption of reliance under *Vasquez v. Superior Court*, 484 P.2d 964, 973 (Cal. 1971). He has not pled "actual reliance," a requirement for plaintiffs seeking to benefit from *Vasquez*. *Mirkin v. Superior Court*, 5 Cal. 4th 1082, 1095 (1993).

Plaintiff's other theory for presumed reliance, based on *Blackie v. Barrack*, 524 F.2d 906 (9th Cir. 1975), is also rejected. That was a securities-fraud case that has since been limited to apply to situations "primarily alleg[ing] omissions." *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999). But "California negligent misrepresentation law . . . does not impose liability for negligent omissions; some 'positive assertion' is required." *Regents of Univ. of Cal. v. Principal Fin. Group*, 412 F. Supp. 2d 1037, 1045 (N.D. Cal. 2006) (Patel, J.). Thus, to the extent any omissions are alleged, they would not be actionable as a negligent misrepresentation. *Blackie* does not apply.

9

1 that these issues will predominate over individual questions. This is true for each of the three
2 claims that plaintiff asserts in his complaint.

### (i)   *Negligent-Misrepresentation Claim.*

In California, the elements of a negligent-misrepresentation claim are: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox*, 181 Cal. App. 3d at 962.[5]

As discussed above, there are some common questions. Plaintiff ignores, however, that individual subscribers differ from each other in important respects. These differences will bear on essential elements of the negligent misrepresentation claim. Here, it will be necessary to determine subscriber-by-subscriber whether even if Comcast revealed the fact that the equipment was not needed in a particular case, the subscriber would have rented the equipment anyway to improve the signal or to view all the channels that could not be viewed through a cable-ready but limited-channel device. Whether Comcast actually misled and harmed its subscribers cannot be determined on a class-wide basis because of the variety of possible reasons that a subscriber rented the equipment at issue. Plaintiff alleges that the converter box was unnecessary for all basic cable subscribers. This is not true. The undisputed record here demonstrates that the cable boxes may have been necessary for some basic cable subscribers to enjoy the full programming available at the best quality possible. Those viewers could not have been harmed by any alleged misrepresentation. They would have rented the equipment whether or not Comcast had obtained their affirmative consent. It would be impossible to determine, on class-wide proof, whether all subscribers were harmed by Comcast's conduct (Schulz Decl. ¶¶ 6–11).

---

[5] One of the themes of plaintiff's briefs is his belief that a violation of 47 U.S.C. 543(f) necessarily translates into a negligent-misrepresentation or CLRA claim. Merely alleging a violation of the Communications Act, however, does *not* establish all of the elements for those claims, particularly whether the consumers were misled.

10

Individual issues will predominate the litigation on the negligent-misrepresentation claim.

### (ii) *CLRA Claim.*

Plaintiff has no remaining grounds for relief on the CLRA claim. When this case was initially filed, plaintiff sought both injunctive relief and damages under the CLRA. By order dated December 21, 2006, the Court held that plaintiff had no standing to seek injunctive relief because he no longer subscribes to Comcast's cable service. The first amended complaint removed all claims for damages and injunctive relief under the CLRA. Plaintiff then, however, filed a second amended complaint which attempted to state a claim for damages under the CLRA. An order filed concurrently herewith strikes the second amended complaint for untimeliness. Thus, plaintiff is foreclosed from recovering any damages or injunctive relief pursuant to the CLRA. The CLRA claim is no longer viable.

Even if the CLRA did apply here, individual issues would predominate for the same reasons discussed above regarding the negligent-misrepresentation claim. Resolution of the CLRA claim will require inquiry into the status of individual subscribers. The CLRA permits recovery where a consumer "suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770." Cal Civ. Code 1780(a). As discussed above, it will be impossible to determine on class-wide proof whether each subscriber would have rented the equipment regardless of Comcast's obtaining their affirmative consent. This is an issue that would have to be determined subscriber by subscriber. Deciding whether these subscribers were harmed *at all* would predominate the litigation of the CLRA claim.

### (iii) *Unjust-Enrichment Claim.*

Plaintiff also asserts an unjust-enrichment claim. The California Court of Appeal has explained: "An individual is required to make restitution if he or she is unjustly enriched at the expense of another. A person is enriched if the person receives a benefit at another's expense." *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1662–63 (1992) (citations omitted). An unjust enrichment claim, however, will lie only where there is no valid express contractual

11

relationship between the parties. *See Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (Patel, C.J.). Plaintiff here asserts an unjust enrichment claim against defendants for the above-described conduct.

When defendants moved to dismiss the initial complaint in December 2006, they asserted that there was a valid contract between the parties that precluded an unjust-enrichment claim. An order dated December 21, 2006, denied this aspect of defendants' motion, holding that it was too early to conclude whether defendants' policies and procedures notice constituted a valid contract between the parties.

Defendants now contend that at plaintiff's deposition, he testified that when he signed one of Comcast's work orders, he believed he was entering into a contract (Jaffe Decl. Exh. A at 79). While defendants do not contend that plaintiff's unjust-enrichment claim must be foreclosed at this point — such a determination being more appropriate on a summary-judgment motion — they do argue that this demonstrates a predominance of individual issues on the unjust-enrichment claim. This order agrees. Only those class-members who do not have a valid contract with Comcast will be able to pursue an unjust-enrichment claim. Whether a specific contract is valid will require a case-by-case analysis of many issues, such as whether the contract is void or whether the contract could be rescinded for fraud or mistake. Some subscribers, like plaintiff, may believe they had a valid contract. Others may not. These issues cannot be resolved on a class-wide basis. Individual issues will predominate.

*          *          *

The California claims under which plaintiff has sought to recover will necessarily involve the resolution of numerous individual issues. This order holds that these issues will predominate in this litigation. Plaintiff has not carried his Rule 23(b)(3) burden.

### B. Ascertainability.

Ascertainability is a major problem. As discussed above, the proposed Class A would consist of customers who owned "cable-ready television set(s) or a video cassette or DVD recorder or player and subscribe or subscribed to basic programming, expanded basic, standard programming or other comparable basic service provided by defendants."

1    "Courts have held that the class must be adequately defined and clearly ascertainable
2  before a class action may proceed." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679–80
3  (S.D. Cal. 1999) (Brewster, J.). "[A] class will be found to exist if the description of the class is
4  definite enough so that it is administratively feasible for the court to ascertain whether an
5  individual is a member." *O'Connor v. Boeing North Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal.
6  1998) (Collins, J.). The problem of ascertainability is the inability for future courts to ascertain
7  who was and was not bound by the judgment. If the class definition depends criteria that are
8  not readily ascertainable, it would be nearly impossible to determine who was actually included
9  an appropriate class member.

10    Class A is ill-defined and not clearly ascertainable. Determining who the Class A
11  members are would require "answer[ing] numerous individualized fact-intensive questions."
12  *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 181 (S.D.N.Y. 2005) (Scheindlin, J.). The
13  members of the putative converter-box renter class must have had "cable-ready television set(s)
14  or a video cassette or DVD recorder or player." There would be no easy way to determine
15  which subscribers owned a cable-ready television during the relevant class period. Plaintiff
16  nowhere cites, nor has the Court found in the voluminous record, any Comcast records that
17  contain information on the types of devices owned by its subscribers. It would be impossible to
18  determine without significant inquiry which subscribers owned such devices.

19    Here, it would be difficult to know who was merged into the judgment, and if so,
20  whether they were included appropriately. Class A is ill-defined and unmanageable.

**CONCLUSION**

For the foregoing reasons, it is unnecessary to reach the other Rule 23 issues and plaintiff's motion for class certification is **DENIED**.[6]

**IT IS SO ORDERED.**

Dated: July 11, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[6] Defendants moved to strike certain exhibits submitted by plaintiff in support of the motion. The exhibits were filed in violation of Civil Local Rule 7-5(a), which requires that "evidentiary matters must be appropriately authenticated by an affidavit or declaration." Plaintiff subsequently filed a declaration authenticating those exhibits. The motion is denied as moot.